IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.B.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, | : | NO.  22-4226 |
| Commissioner of Social Security[2] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                November  26, 2024

Plaintiff seeks review of the Commissioner's decision denying her application for supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed an application for SSI on April 25, 2019, alleging disability beginning on December 1, 2017, as a result of anxiety, post-traumatic stress disorder ("PTSD"), and back problems.  Tr. at 100, 226, 254.[3]  Her application was

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her initials.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner O'Malley should be substituted for Kilolo Kijakazi as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]Plaintiff filed earlier applications for SSI and disability insurance benefits, one of which was remanded by the federal court on June 10, 2016.  Tr. at 65, 250; Civil Action

denied initially, id. at 109-13, and on reconsideration, id. at 121-24, and she requested an administrative hearing. Id. at 125. After holding a hearing on March 18, 2021, id. at 35-63,[4] the ALJ issued an unfavorable decision on June 29, 2021. Id. at 13-28. The Appeals Council denied Plaintiff's request for review on August 24, 2022, id. at 1-4, making the ALJ's June 29, 2021 decision the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff sought review in the federal court on October 21, 2022, Doc. 1, and the matter is now fully briefed and ripe for review. Docs. 9-11.[5]

## II. LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v.

---

15-6727, Doc. 15. On remand, an ALJ found Plaintiff was not disabled and she did not seek further review. Tr. at 65.

[4]The ALJ conducted an earlier hearing, but as explained at the beginning of the hearing held on March 18, 2022, there was a problem with the recording so the ALJ convened a new hearing. Tr. at 37-38.

[5]The matter was originally assigned to the Honorable Richard Lloret and reassigned to me upon Judge Lloret's retirement. Doc. 14. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 15.

Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claims

In the June 29, 2021 decision under review, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since April 25, 2019, her application date. Tr. at 15. At step two, the ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the cervical and thoracic spine, right ankle fracture, depression, anxiety, trauma, PTSD, and phencyclidine ("PCP") use disorder. Id.[6] At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. Id. at 16.

The ALJ determined that Plaintiff retains the RFC to perform light work except she can frequently operate hand controls and handle bilaterally; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and crawl; frequently balance, kneel, and climb ramps and stairs; occasionally be exposed to vibration, unprotected heights,

---

[6]The ALJ found that Plaintiff also suffers from the non-severe impairments of asthma, a history of fibroids, hypertension, mild dysphagia, and anemia. Tr. at 15.

moving mechanical parts, humidity, wetness, dust odors, fumes, and other pulmonary irritants; perform simple, routine, and repetitive tasks, but not at a production rate pace; make simple work-related decisions and tolerate only occasional changes in the work setting; and occasionally interact with supervisors, coworkers, and the public. Tr. at 18. The ALJ found that Plaintiff has no past relevant work. Id. at 27. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff can perform the jobs of sorter, hand bander, and inspector and hand packager. Id. at 28. As a result, the ALJ concluded that Plaintiff is not disabled. Id.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to include medically supported limitations in the RFC and failed to articulate why she omitted such limitations. Doc. 9 at 2-7; Doc. 11. Plaintiff also contends that the ALJ and Appeals Council members who considered her claim were not properly appointed. Doc. 9 at 7-9. Defendant responds that the ALJ properly considered the relevant evidence in determining Plaintiff's RFC, and that the ALJ and Appeals Council members were properly appointed. Doc. 10.

**B.     Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on August 19, 1977, and thus was 41 years old when she applied for SSI (April 25, 2019), and 43 years old at the time of the ALJ's decision. June 29, 2021). Tr. at 80, 226. She is five feet, five inches tall and weighs approximately 150-

165 pounds. Id. at 42, 254. Plaintiff completed eleventh grade. Id. at 45, 255.[7] She has no full-time past relevant work. Id. at 46. She lives in a house with a roommate who is a close family friend. Id. at 42.

At the administrative hearing, Plaintiff discussed her physical and mental impairments. Plaintiff complained of weakness in her hands that causes her to drop things. Tr. at 47, 57. Plaintiff also complained of pain in her neck and back for which she takes Extra Strength Tylenol and Motrin. Id. at 51, 54, 57. Plaintiff also has anxiety problems and explained that she is fearful of and has trouble dealing with people. Tr. at 44, 53-54. She described it as having trust issues and believes that people are trying to assault her. Id. She also has trouble concentrating. Id. at 46, 55.

A vocational expert ("VE") also testified at the administrative hearing. Tr. at 58-62. Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 4-5, the VE testified that such an individual could perform other work, including sorter, hand bander, and inspector/hand packager. Id. at 59. In addition, the VE testified that if the individual would be off-task more than 15% of the time, such a person would not be employable. Id. at 60.

---

[7]In her Function Report, Plaintiff indicated that she cannot read or write, tr. at 253, although at the hearing, Plaintiff testified that she could read and write. Id. at 46. She has also reported that she completed high school and nursing school. Id. at 443.

C. **<u>Medical Evidence Summary</u>**[8]

Plaintiff has a history of mental health diagnoses, including anxiety, unspecified mood disorder, unspecified bipolar disorder, PTSD, and intermittent explosive disorder. <u>See</u>, <u>e.g.</u>, <u>tr.</u> at 330, 345. She has reported physical and sexual abuse as a child and witnessed her fiancé's murder in 2015. <u>Id.</u> at 404, 413, 416, 435, 487, 554, 780. Plaintiff was hospitalized in December 2015 at Episcopal Hospital complaining that she was "going through a lot" including the shooting death of her fiancée. <u>Id.</u> at 554.[9] She reported increasing depression, decreased sleep, and nightmares, and daily use of PCP. <u>Id.</u> On admission, she was diagnosed with unspecified depressive disorder, PCP abuse disorder, and a rule out diagnosis of PTSD, and assessed a Global Assessment of Functioning ("GAF") score of 20.[10] <u>Id.</u> A week later, when discharged, her diagnoses

---

[8]This summary will focus primarily on the mental health record, consistent with Plaintiff's claim.

[9]There is reference to an earlier psychiatric hospitalization at Episcopal in 2014, but the treatment notes are not contained in the record. <u>See</u> <u>tr.</u> at 485.

[10]A GAF score is a measurements of a person's overall psychological, social, and occupational functioning, and is used to assess mental health. <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th ed. Text Revision (2000) ("<u>DSM IV-TR</u>"), at 34. A GAF score of 11-20 indicates "[s]ome danger of hurting self or others (e.g. suicide attempts without clear expectation of death; frequently violent; manic excitement) [or] occasionally fails to maintain minimal personal hygiene (e.g., smears feces) [or] gross impairment in communication (e.g., largely incoherent or mute). <u>Id.</u> Although the <u>DSM 5</u> eliminated the GAF scale, the Commissioner "will continue to receive and consider GAF in medical evidence." Administrative Message-13066 (July 22, 2013).

were mood disorder not otherwise specified, PTSD, and PCP use disorder, with a GAF score of 55,[11] and was prescribed fluoxetine and prazosin.[12]  Id. at 554-55.

Plaintiff was hospitalized at the Kirkbride Center in August 2016 with homicidal ideation towards her neighbor.  Tr. at 404-05.  At the time she was also using PCP.  Id. at 412, 416, 419, 420.  Upon discharge from Kirkbride, Plaintiff began a drug and alcohol program called STOP.  Id. at 434.

Plaintiff began outpatient therapy and treatment at John F. Kennedy Behavioral Health on October 18, 2016, with monthly appointments scheduled through April 2017. Tr. at 435-39 (10/18/16 – Intake), 440-48 (11/28/16 - Intake Psychiatric Evaluation), 462 (1/9/17 – Psychotherapy), 463 (2/6/17 – Psychotherapy), 450-55 (2/27/17 – Medication Management), 456-61 (3/21/17 – Medication Management), 464 (4/18/17 – Psychotherapy).  Tana Andre, D.O., diagnosed Plaintiff with PTSD, other bipolar disorder with hypomanic episodes and major depressive disorder episodes, and severe PCP use disorder, and prescribed Seroquel and clonidine.[13]  Id. at 447-48.  On March 21,

---

[11] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM IV-TR at 34.

[12] Fluoxetine (brand name Prozac) is an antidepressant used to treat major depressive disorder, bulimia nervosa, obsessive-compulsive disorder, panic disorder, and premenstrual dysphoric disorder.  See https://www.drugs.com/fluoxetine.html (last visited Nov. 12, 2024).  Prazosin is used to treat hypertension.  See https://www.drugs.com/mtm/prazosin.html (last visited Nov. 12, 2024).

[13] Seroquel is used to treat schizophrenia and in conjunction with other mediations to prevent episodes of depression in patients with bipolar disorder.  See https://www.drugs.com/seroquel.html (last visited Nov. 12, 2024).  Clonidine is used to

2017, Dr. Andre noted that Plaintiff was markedly depressed with triggering of PTSD after encountering the man who sexually abused her. Id. at 460. She was not sleeping well, her anxiety was poorly controlled, and the doctor increased Seroquel and considered adding an antidepressant if there was no symptom improvement. Id. She was discharged for non-attendance on June 20, 2017. Id. at 826.

Plaintiff began treatment with Citywide Community Counseling ("Citywide") on May 9, 2019, complaining of sleeping problems, anxiety, auditory hallucinations, and PCP use most recently the prior month. Tr. at 485, 486. On mental status examination ("MSE"), the clinician noted Plaintiff had a euthymic, depressed, and anxious mood with a mildly blunted affect, and reported auditory hallucinations. Id. at 486-87.[14] Plaintiff was diagnosed with schizoaffective disorder, a learning disability, PCP abuse, in partial remission, and a rule out diagnosis of PTSD, and was prescribed Abilify.[15] Id. at 487-88. The record also contains notes from three psychotherapy sessions at Citywide in May, June, and August 2019, during which Plaintiff admitted self-medicating and isolating and was diagnosed with major depressive disorder, severe, with psychotic features. Id. at 758, 760, 762. Therapist Hamid Sabur suggested she go to a drug and alcohol recovery program to work on her addiction. Id. at 762.

---

treat hypertension. See https://www.drugs.com/clonidine.html (last visited Nov. 12, 2024).

[14] The clinician, whose signature is illegible, also indicated that Plaintiff's "concentration and memory" were both intact and impaired. Tr. at 487-88.

[15] Abilify is an antipsychotic which can be used alone or with a mood stabilizer to treat bipolar I disorder. See https://www.drugs.com/abilify.html (last visited Nov. 12, 2024).

9

On July 11, 2019, a friend dropped Plaintiff off at the emergency department of Temple University Hospital – Episcopal Behavioral Health, because Plaintiff was having thoughts of stabbing a friend. Tr. at 497. Plaintiff reported "she needs help getting of[f] pcp" and "having mental problems, racing thoughts of hurting people." Id. at 496-97. Ray Leslie, M.D., noted that Plaintiff appeared intoxicated and paranoid, was disorganized, and had a bizarre affect. Id. at 497. Plaintiff admitted using crack cocaine and PCP hours before arriving at the hospital, and reported daily use of PCP and cocaine use one or two times a week. Id. at 498-99; see also id. at 507 (drug screen). She was held for 23-hour observation and treated with risperidone and Ativan.[16] Id. at 502-03.

Most recently in the record, Plaintiff began mental health treatment at Comhar. Tr. at 775-825. Although the records indicate an intake date of September 3, 2019, the treatment notes in the record begin on April 16, 2020. Id. at 775-85. On April 25, 2020, therapist Nichole Scheerer noted a diagnosis of PTSD. Id. at 795. The treatment goal was to reduce Plaintiff's nightmares, PTSD-related symptoms, and depressive symptoms. Id. On June 23, 2020, Priyankar Sarkar, M.D., noted that Plaintiff had been struggling with depression and had low energy. Id. at 801. The doctor indicated that Plaintiff was suffering from only mental health issues rather than a combination of mental health and substance abuse issues. Id. at 800-01. On MSE, Dr. Sarkar found Plaintiff had depressed and anxious mood, goal-directed thought processes, recent memory and five-

---

[16]Risperidone is an antipsychotic used to treat schizophrenia and symptoms of bipolar disorder. See https://www.drugs.com/risperidone.html (last visited Nov. 12, 2024). Ativan is a benzodiazepine used to treat anxiety disorders and insomnia caused by anxiety or temporary situational stress. See https://www.drugs.com/ativan.html (last visited Nov. 12, 2024).

minute recall were both 3/3, and her concentration/attention span were focused and remote memory was intact. Id. at 799-800. The doctor diagnosed major depression and prescribed Wellbutrin.[17] Id. at 802-03. On September 16, 2020, Ms. Scheerer noted that Plaintiff was inconsistent in attending treatment and made limited progress, and that outreach attempts were not successful. Id. at 814.[18]

On February 21, 2020, Baochan Tran, Psy.D., conducted a consultative Mental Status Evaluation, during which Plaintiff complained about significant difficulty falling and staying asleep due to racing thoughts, depressive symptoms including crying spells, irritability, fatigue, loss of energy, and social withdrawal, and anxiety-related symptoms including excessive apprehension, irritability, difficulty concentrating, and restlessness. Tr. at 715-16. She suffered from nightmares, flashbacks, and panic attacks. Id. at 716. On MSE, Dr. Tran noted circumstantial and slightly disorganized thought processes, depressed and highly distractible affect, and mildly impaired attention and concentration due to significant distractibility. Id. at 717. Plaintiff could perform simple mathematical calculations without difficulty, but could not perform division. Id. at 718. Recent and remote memory skills were impaired due to significant inattention, recalling 1 of 3

---

[17]Wellbutrin (generic bupropion) is an antidepressant. See https://www.drugs.com/wellbutrin.html (last visited Nov. 12, 2024).

[18]Many of the Comhar records consist of notations of attempted contact with no actual treatment notes. Tr. at 805 (5/19/20 – no answer to phone call), 806 (5/5/20 – confirming appointment for 5/6/20), 807 (5/20/20 – confirming appointment for 6/23/20), 808-09 (6/24/20 – attempted outreach, left message), 810 (7/15/20 – attempted outreach, left voicemail), 811 (7/28/20 – attempted contact, voicemail, called in medication), 812 (8/14/20 – voicemail scheduling appointment), 813 (8/27/20 – cancelling 9/8/20 appointment), 814-16 (9/16/20 – discharged – unable to contact/locate client).

objects immediately and none after a delay.  Id.  In addition, she had difficulty understanding task demands and needed examples.  Id.  Dr. Tran diagnosed unspecified depressive disorder, unspecified anxiety disorder, PTSD, and PCP use disorder, moderate, in sustained remission.  Id. at 719.  The doctor also indicated that Plaintiff would not be able to manage her own funds.  Id.  In a Medical Source Statement ("MSS"), Dr. Tran found that Plaintiff had moderate limitations in the abilities to understand, remember , and carry out simple and complex instructions and make judgments on simple and complex work-related decisions.  Id. 721.  Similarly, Dr. Tran found Plaintiff had moderate limitation in the abilities to interact with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting.  Id. at 722.

At the initial consideration level, on March 3, 2020, Paul Taren, Ph.D., found from his review of the record that Plaintiff suffered from depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and trauma and stressor-related disorders, and had moderate limitations in her abilities to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself.  Tr. at 71.  The doctor found that Plaintiff was not significantly limited in understanding, remembering, and carrying out very short and simple instructions, and moderately limited in the ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods.  Id. at 75-76.

On reconsideration on June 29, 2020, Roger K. Fretz, Ph.D., found mental limitations consistent with Dr. Taren's findings.  Tr. at 89, 95-96.  Both Drs. Taren and

Fretz concluded that Plaintiff could "carry out no more than simple, routine tasks." Id. at 77, 97.

### C. Plaintiff's Claims

#### 1. Opinion Evidence

Plaintiff's substantive claim involves the ALJ's consideration of the mental health treatment evidence, specifically the ALJ's failure to include limitations noted by consultative examiner Dr. Tran in the RFC assessment. Doc. 9 at 3-7; Doc. 11. Defendant responds that the RFC assessment is based on all of the relevant evidence of record, including Dr. Tran's assessment. Doc. 10 at 18-25.

During his consultative examination, Dr. Tran found that Plaintiff's attention and concentration were "[m]ildly impaired due to significant distractibility and reduced intellectual functioning," noting that Plaintiff counted backwards from 10 to 1 and performed simple calculations (other than division) without difficulty but was unable to perform the serial 7s and committed an error with the serial 3s. Tr. at 718. In addition, Dr. Tran found that Plaintiff's memory was "impaired due to significant inattention," noting that Plaintiff recalled 1 of 3 objects immediately and none after a delay and had difficulty understanding task demands. Id. In the accompanying MSS, Dr. Tran found that Plaintiff had moderate limitations[19] in all areas of understanding, remembering, and

---

[19]The MSS utilized a five-point scale, ranging from "None," indicating that the person is able to function in the area independently, appropriately, effectively, and on a sustained basis, to "Extreme," where the person is unable to function. Tr. at 721. Relevant to Dr. Tran's findings, "Moderate" is the middle of the five-point scale, and indicates that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Id.

carrying out instructions, including the abilities to understand, remember, and carry out both simple and complex instructions and make simple and complex work-related decisions.  Id. at 721.  In addition, the doctor found that Plaintiff was moderately limited in her abilities to interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting.  Id. at 722.

Plaintiff first complains that the "ALJ suggested that [Plaintiff's] attention was not 'mildly' limited, as Dr. Tran noted in one part of his report, but 'significantly limited' as he stated throughout the rest of his report," and that the ALJ failed to adequately address such significant limitations in the RFC assessment.  Doc. 9 at 4 (citing tr. at 26).  When read in context, the ALJ was addressing inconsistencies between Dr. Tran's narrative report and MSS, and within the MSS itself.

> Dr. Tran submitted a [MSS] in which he opined [Plaintiff] had moderate limitation in her ability to understand, remember, and carry out simple instructions.  He supported his opinion by noting that she has significant anxiety, depression, and PTSD, which all impact her ability to attend to information, significantly decreased attention, and she required repetition of questions during examination. . . .  Dr. Tran had an opportunity to examine [Plaintiff] and while the examination findings contained within the report are somewhat inconsistent, in that it finds only mild problems in attention, but then notes her recent and remote memory skills were impaired due to significant inattention; his overall opinion of moderate limitations is generally persuasive because it is supported by the examination itself.  Dr. Tran also provides additional explanation showing difficulties in these functional areas as detailed above.  It is also generally consistent with the record as a whole ([tr. at 758-63 – Citywide notes]), including [Plaintiff's] testimony that she has problems with concentration and has problems getting

14

> along with others. However, Dr. Tran's statement that there are no other capabilities, (such as ability to concentrate, persist, or maintain pace, and the ability to adapt or manage oneself) affected by the impairment ([id. at 721-22]) is not persuasive because it is inconsistent with his findings on examination, and inconsistent with his overall opinion as stated above. It is also inconsistent with the record as a whole, which shows [Plaintiff] was anxious and agitated on exam, with only fair judgment and insight ([id. at 758, 760]). She has a history of drug use and self-medicates ([id. at 762), and exhibited flight of ideas ([id.]).

Tr. at 26.

I find no error in the ALJ's consideration of Dr. Tran's opinion. The ALJ thoroughly and thoughtfully considered Dr. Tran's narrative report and the MSS, explained her resolution of inconsistencies in Dr. Tran's characterizations of Plaintiff's limitations, and concluded that the findings of moderate limitations were "generally persuasive" and consistent with the doctor's examination and the record as a whole. This conclusion is supported by substantial evidence. See tr. at 762 (8/20/19 – Citywide notes indicating difficulty remembering an earlier session two months prior), 799-800 (6/4/20 – Comhar notes indicating focused concentration/attention, good insight/judgment, recent and 5-minute recall of 3/3 objects), 272, 274 (12/23/19 – Function Report indicating Plaintiff can take public transportation, pay bills, and count change, but is unable to handle a savings account or checkbook and has impaired concentration), 71 (3/3/20 – initial consideration finding moderate limitations), 89 (6/29/20 – reconsideration finding moderate limitations).

Plaintiff then argues that the ALJ found Dr. Tran's opinion -- that Plaintiff has moderate limitations in the abilities to understand, remember, and carry out simple

15

instructions -- generally persuasive yet failed to account for these limitations in determining that Plaintiff could perform simple, routine, repetitive tasks. Doc. 9 at 4-7. In support, Plaintiff argues that "[i]f the ALJ accepts the opinion of a medical source, she must include the limitations identified by that medical source in the RFC finding." Id. at 2 (citing 20 C.F.R. § 916.945(e)). Defendant responds that the ALJ "adequately explained the evidence she relied on in assessing the RFC." Doc. 10 at 23.

The regulation cited by Plaintiff requires the ALJ to consider the limiting effects of all impairments, severe and non-severe, in determining a claimant's RFC and does not focus on the consideration of medical opinions. 20 C.F.R. § 916.945(e). But contrary to Plaintiff's argument, the Third Circuit has held that an ALJ is not required to incorporate every limitation contained in a medical opinion that he or she finds persuasive. See Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014).

> [N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole "significant" weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner.

Id. (citing 20 C.F.R. § 416.927(d)(2), 416.946(c); see also Matthews v. Kijakazi, Civ. No. 21-1140, 2022 WL 4535087, at *1 n.2 (W.D. Pa. Sept. 28, 2022) (there is no "requirement that an ALJ explicitly reject any part of a persuasive/very-persuasive opinion that does not make it into the RFC verbatim and provide an explanation for having purportedly rejected such evidence"); Dingman v. Kijakazi, Civ. No. 21-1946, 2022 WL 3350366, at *6 (E.D. Pa. Aug. 12, 2022); Northington v. Berryhill, Civ. No.

16

17-2922, 2018 WL 2172565, at *6 (E.D. Pa. Feb. 27, 2018), R&R adopted, 2018 WL 2159923 (E.D. Pa. May 10, 2018).[20] Thus, the ALJ was not bound by each of Dr. Tran's findings merely because she found Dr. Tran's opinion generally persuasive.[21]

With respect to Plaintiff's limitations imposed by her mental impairments, the ALJ's RFC assessment -- limiting Plaintiff to simple, routine, and repetitive tasks, but not at a production rate pace, and making simple work related decisions with only occasional changes in the work setting, with occasional interaction with supervisors, coworkers, and the public -- is supported by substantial evidence. The ALJ noted that during Plaintiff's most recent mental health treatment at Comhar she was noted as having normal attention and concentration, intact recent and remote memory, and was focused. Tr. at 23 (citing id. at 793-94 – 4/25/20 – therapist Scheerer noting intact recent and remote memory, attention/concentration was not impaired), 799-800 (6/23/20 – Dr. Sarkar noted no impairment in Plaintiff's recent and five-minute recall, and her concentration was focused and her remote memory intact). In addition, based on review of the records, each of the State disability mental consultants concluded that Plaintiff was "[n]ot significantly

---

[20]Although Wilkinson and the regulations cited therein predate the changes to the regulations governing the consideration of opinion evidence, nothing has changed about the ALJ's duty to craft the RFC assessment.

[21]I note that, as previously discussed, Dr. Tran expressed conflicting views regarding Plaintiff's attention and concentration in his narrative report and MSS, finding Plaintiff's attention and concentration mildly impaired in his narrative report and finding Plaintiff had moderate limitation in her abilities to understand, remember, and carry out instructions, both simple and complex, in the MSS. Compare tr. at 718 with id. at 721. In addition, contrary to a finding of mild or moderate limitation, the doctor indicated in the MSS that Plaintiff's impairments did not impact her abilities to concentrate, persist or maintain pace. Id. at 722.

limited in the ability to understand and remember very short and simple directions," id. at 75 (Dr. Taren), 95 (Dr. Fretz), and both concluded that Plaintiff "is able to carry out no more than simple, routine tasks due to the limitations associated with her impairment." Id. at 77 (Dr. Taren), 97 (Dr. Fretz).  Thus, I conclude that the ALJ did not err in her consideration of Dr. Tran's opinion and that the mental RFC assessment is supported by substantial evidence.

        2.        Authority of ALJ and Appeals Council Members

Plaintiff also challenges the authority of the ALJ and Appeals Council judges who considered her case, arguing that they were not properly appointed.  Doc. 9 at 7-10.  Defendant responds that the ALJ and Appeals Council Judges were properly appointed.  Doc. 10 at 4-16.

Relying on the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346(a), and two cases arising in the District of Minnesota, Plaintiff argues that Nancy Berryhill's appointment as Acting Commissioner of Social Security was not valid at the time she ratified the ALJ's appointment and the appointment of the members of the Appeals Council, because she had served beyond the 210 days authorized by the FVRA.  Doc. 9 at 7-8 (citing Brian T.D. v. Kijakazi, 580 F. Supp.3d 615 (D. Minn. 2022); Richard J.M. v. Kijakazi, Civ. No. 19-827, 2022 WL 959914 (D. Minn. Mar. 30, 2022)).  After Plaintiff filed her brief, a panel of the Third Circuit rejected Plaintiff's reading of the FVRA in a not precedential opinion, finding "that Berryhill was lawfully serving as acting SSA Commissioner when she ratified the appointments of the SSA ALJs."  Gaiambrone v. Comm'r of Soc. Sec., C.A. 23-2988, 2024 WL 3518305, at *3 (3d Cir. July 24, 2024).

The panel explained that the FVRA permits two separate, independent time periods for acting service – 210 days beginning on the date the vacancy occurs, and a second period during the pendency of a nomination.  Id.  The panel relied in part on a recent decision of the Eighth Circuit which reversed one of the cases on which Plaintiff relies.  Id. (citing Dahle v. Kijakazi, 62 F.4th 424 (8th Cir. 2023)).  Although the opinion is not binding, I rely on it in rejecting Plaintiff's procedural argument.

IV.     **CONCLUSION**

The ALJ properly considered the opinion of Dr. Tran and the mental limitations contained in the RFC assessment are supported by substantial evidence.  Plaintiff's challenge to the authority of the ALJ and Appeals Council members is meritless.  Nancy Berryhill was properly serving as the Acting Commissioner of Social Security at the time she ratified the appointments of the ALJ and Appeals Council members.

An appropriate Order follows.